## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRAVIS BARNETT,               :        No. 1:13-cv-2206
                              :
            Plaintiff,        :
                              :        Hon. John E. Jones III
      v.                      :
                              :
TROOPER ALEX GROTE and        :
TROOPER KEVIN GOSS,           :
                              :
            Defendants.       :

## MEMORANDUM & ORDER

### July 30, 2015

Presently pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 31) on Counts I (Excessive Force) and III (Failure to Intervene) of the Complaint. For the reasons herein articulated, we will deny the Motion.

## I.   BACKGROUND

On the evening of September 9, 2011, Pennsylvania State Police Troopers Alex Grote and Kevin Goss ("Defendants") responded to a report of a domestic dispute involving Travis Barnett ("Plaintiff") and his wife, Lisa Barnett. (Doc. 1, ¶¶ 5-6). The dispute occurred in the couple's trailer, at the Mickey Inn Trailer Park, in Chambersburg, Pennsylvania. (Doc. 32, ¶ 1). After the altercation, but before the police arrived, Mrs. Barnett left the area in her car. (Doc. 1, ¶ 7).

1

Defendants encountered her as she was leaving, and she informed them that she was not injured. (*Id.* ¶ 9). Defendants instructed Mrs. Barnett to return to the vicinity of the trailer and stay in her car, which she did. (*Id.* ¶ 10).

Plaintiff was in his yard yelling for his dog when Defendants arrived at the residence. (Doc. 32, ¶ 5). According to the police report, Plaintiff was visibly drunk (Doc. 43-4, p. 2), and it was at some point established that Plaintiff had smoked crack cocaine and consumed alcohol that day. (Doc. 32, ¶ 7; Doc. 43-5, p. 13).[1] At Defendants' direction, Plaintiff moved to his porch and sat down. (Doc. 32, ¶ 6). The parties agree that Plaintiff did not answer Defendants' questions concerning the domestic dispute, but they differ as to his level of cooperation, with Defendants maintaining that Plaintiff would not confirm even basic biographical information. (Doc. 32, ¶ 7; Doc. 42, ¶ 7).

At some point, Plaintiff stood, turned around, and began walking up the steps to his residence. (Doc. 32, ¶ 8). Defendant Goss ordered Plaintiff to stop and sit back down, and advised Plaintiff that if he did not cooperate with the investigation into the domestic dispute, he would be arrested for public

---

[1] It is unclear whether the troopers knew, at the time, that Plaintiff had smoked crack cocaine. Mrs. Barnett testified that, when she first encountered Defendants, she did not tell them that Plaintiff had been using drugs and drinking. (Doc. 43-3, p. 12). However, Defendants Goss and Grote stated that she did reveal that Plaintiff was drunk and high when they first talked to her. (Doc. 32-1, p. 13; Doc. 32-2, p. 8).

drunkenness and transported to Franklin County Jail. (Doc. 32, ¶ 9). Plaintiff

returned to where he had been sitting but refused to answer any questions. (Doc.

32, ¶ 10).

Plaintiff again attempted to move towards the door of his residence. (Doc.

32, ¶ 17). He testified that he told the troopers something like, "if you're done

talking to me, I'm going the f--- in my house. . . . Go talk to that b---- across the

street [referring to his wife, whose car was parked nearby]." (Doc. 43-5, p. 22).

Plaintiff began walking up the steps. Significantly, it is disputed whether

Defendants instructed Plaintiff to stop and refrain from entering his trailer.

Defendants represent that, although they did not inform Plaintiff he was under

arrest, they did command him to stop. (*E.g.*, Doc. 32-1, p. 95; Doc. 32-2, p. 20).[2]

Plaintiff maintains that no verbal warning was given and that, since no one had

stated otherwise, he believed he was free to leave. (Doc. 32, ¶¶ 18-19; *see also*

---

[2] Specifically, Defendant Grote testified that, when Plaintiff stood and turned to proceed up the steps, Defendant Grote yelled, "No, stop." (Doc. 32-2, p. 20). Defendant Goss first testified that he did not say anything to Plaintiff before laying hands on him. (Doc. 32-1, p. 45). However, when later questioned by his attorney, he stated that he "misspoke" and that, as Plaintiff was attempting to enter the trailer, "I told him to stop." (Doc. 32-1, p. 95). Defendant Goss also submitted an errata sheet following his deposition, seeking to add that he told Plaintiff "he could not go back inside his trailer." (Doc. 43-1, p. 31). The police incident report, prepared by Defendant Goss, states: "[Plaintiff] began to walk away from me and up the stairs. I ordered him to stop and he refused my command. I then grabbed a hold of him and pulled him back towards me." (Doc. 43-4, p. 2).

Doc. 43-5, p. 22 (Plaintiff's testimony that the troopers did not instruct him that he could not enter his home).

The parties do agree that, as Plaintiff was walking up his steps, Defendant Goss grabbed Plaintiff's shirt and pulled. (Doc. 32, ¶ 19). Defendant Grote also attempted to take hold of Plaintiff. (Doc. 32, ¶ 20). Goss and Plaintiff both fell backwards,[3] and Goss seized Plaintiff with his left hand and pivoted Plaintiff to his right. (Doc. 32, ¶ 21). As they fell, Plaintiff's head and/or shoulder area hit a junction box on the side of the home. (Doc. 32, ¶ 23). Goss testified that he "stepped to the side to get away from [Plaintiff] so he wouldn't land on top of me." (Doc. 32-1, p. 51). Plaintiff fell on to a cement pad at the foot of the steps, with Goss landing on top of him. (Doc. 32, ¶ 26). Goss testified that he then told Plaintiff that he was under arrest and to put his hands behind his back, however, Plaintiff's arms were underneath his body and Goss was still on top of him. (Doc. 32, ¶ 27; Doc. 32-1, p. 58). According to the troopers' testimony, Goss attempted to extract Plaintiff's right arm, by grabbing it at the elbow and "ripping" it from underneath Plaintiff's body, while Grote worked on his left arm. (Doc. 32-1, p. 62; Doc. 32-2, p. 31). Both troopers testified that Plaintiff actively resisted their

---

[3] According to the testimony of both Defendants and the police report, the wooden steps leading up to the trailer were particularly slippery due to a mossy covering and recent rainstorm. (Doc. 32-1, p. 47; Doc. 32-2, p. 26; Doc. 43-4, p. 2).

attempts to handcuff him (Doc. 32-1, pp. 59, 61; Doc. 32-2, p. 34), while Plaintiff testified that he was trying to comply but his arms were pinned. (Doc. 43-5, p. 26). However, Defendants do not dispute that Plaintiff never hit, punched, kicked, or threatened them. (Doc. 32, ¶ 28; Doc. 32-1, p. 67).[4] When the troopers were unable to extract Plaintiff's arms, Defendant Grote used a Taser to drive-stun Plaintiff in the middle of his back. (Doc. 32, ¶ 29; Doc. 32-2, p. 34). Although Defendant Grote testified that he advised Plaintiff he would be Tased and gave him a final chance to comply before drive-stunning him (Doc. 32-2, p. 34), Plaintiff testified that he was not warned. (Doc. 43-5, p. 26). The troopers were able to easily handcuff Plaintiff after deploying the Taser. (Doc. 32-1, p. 61; Doc. 32-2, p. 34).

Plaintiff contends that the force employed by Defendants broke his eye orbit, nose, maxilla (upper jaw), and two teeth; caused lacerations to his face; re-injured a previously separated shoulder, requiring surgery; and damaged a nerve in his elbow, also requiring surgery. (Doc. 32, ¶ 30). Plaintiff does not provide medical records, however, and Defendants dispute the asserted injuries. (Doc. 42, ¶ 30).

---

[4] Both Plaintiff and Mrs. Barnett also testified that one of the troopers grasped Plaintiff's head and smashed his face into the concrete slab. (Doc. 43-3, p. 8; Doc. 43-5, p. 25). However, Plaintiff does not forward this allegation in his Statement of Undisputed Facts. (Doc. 32).

Plaintiff filed the instant Complaint on August 21, 2013 (Doc. 1), and

Defendants filed an Answer on March 21, 2014 (Doc. 16).  The pending Motion

for Summary Judgment was filed on March 13, 2015, simultaneously with a

supporting memorandum.  (Docs. 31, 33).  After multiple extensions, Defendants

filed opposition papers on June 2, 2015 (Doc. 44), and Plaintiff filed a reply on

June 12, 2015 (Doc. 47).  The Motion is thus ripe for disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is

a sufficient evidentiary basis for a reasonable jury to find for the non-moving

party, and a fact is "material" only if it might affect the outcome of the action

under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533

F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)).  A court should view the facts in the light most favorable to the

non-moving party, drawing all reasonable inferences therefrom, and should not

evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt

Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson

Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

7

## III.   DISCUSSION

As stated, Plaintiff moves for summary judgment on his claims of excessive

force and failure to intervene, which we examine in turn.

### A.   Excessive force

To establish a claim for excessive force under the Fourth Amendment, a

plaintiff must show that "a seizure occurred and that it was unreasonable." *Rivas v.

City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (quoting *Curley v. Klem*, 298

F.3d 271, 279 (3d Cir. 2002)) (internal quotation marks omitted).  A seizure takes

place when a person's "freedom of movement is restrained" such that he does not

"feel free to disregard the police and go about his business . . . or decline the

officers' requests or otherwise terminate the encounter."  *U.S. v. Wilson*, 413 F.3d

382, 386 (3d Cir. 2005) (citation and internal quotation marks omitted).  Both an

investigatory stop, based on reasonable suspicion, and an arrest, based on probable

cause, constitute a seizure.  *See U.S. v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995).

"The test of reasonableness under the Fourth Amendment is whether under

the totality of the circumstances, 'the officers' actions are objectively reasonable in

light of the facts and circumstances confronting them, without regard to their

underlying intent or motivations.'"  *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir.

2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal quotation

marks omitted).   Courts examine an excessive force claim "from the perspective of

a reasonable officer on the scene . . . and must [allow] for the fact that police

officers are often forced to make split-second judgments." *Rivas*, 365 F.3d at 198

(quoting *Graham*, 490 U.S. at 396-97) (internal quotation marks omitted).   If the

use of force is objectively reasonable, then an officer's good faith is irrelevant and

any bad faith motivation on his part is immaterial. *See Abraham v. Raso*, 183 F.3d

279, 289 (3d Cir. 1999).   In determining reasonableness, factors to consider

include "the severity of the crime at issue, whether the suspect poses an immediate

threat to the safety of the officers or others, and whether he actively is resisting

arrest or attempting to evade arrest by flight." *Rivas*, 365 F.3d at 198 (quoting

*Graham,* 490 U.S. at 396) (internal quotation marks omitted). The reasonableness

of the force employed is usually an issue for the jury. *See Williams v. Papi*, 30 F.

Supp. 3d 306, 312 (M.D. Pa. 2014).

Plaintiff asserts that Defendants used excessive force against him.   In his

words, "it is not objectively reasonable to permit someone who is not in custody to

walk away, and then to pull them backwards down the stairs either (1) without any

command to stop, or (2) with only a contemporaneous command to stop (that does

not provide the person with any time to comply)." (Doc. 47, p. 1).   In terms of the

severity of the crime, he notes that the troopers were investigating him for a low-

level harassment offense and that they knew his wife was uninjured.  Plaintiff emphasizes that he sat and talked to Defendants at length, during which time neither his words nor his actions indicated a threat toward the troopers or others. He explains that, in proceeding up the stairs to his home, he was not trying to resist arrest or flee because, importantly, the troopers never told him he was under arrest.  Rather, Plaintiff believes he was free to leave and merely exercised his right to do so.  Based on this factual tableau, Plaintiff asserts that the force employed by Defendants Goss and Grote was unreasonable.

In support, Plaintiff relies heavily on a Tenth Circuit case, *Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010).  In *Cavanaugh*, police were responding to a non-emergency call placed by a husband, asking for assistance in locating his wife who had stormed out of the home following a dispute.  *See id.* at 662.  The husband reported that the wife had consumed alcohol and pain medication and left with a kitchen knife.  *See id.* at 663.  An officer soon encountered the wife as she was walking on the sidewalk toward her home.  *See id.*  Also at that time, a neighbor recounted seeing the wife, noting that her hands were visible by her sides and empty.  *See id.*  When the officer and the wife were within several feet of each other, the wife veered off of the sidewalk toward her home.  *See id.*  She walked quickly but did not run, and the officer followed

10

behind her. *See id.* When the wife reached the front steps of her home, the officer, without warning, deployed his Taser into the woman's back. *See id.* The wife suffered grievous injuries and later filed an excessive force case against the officer and the municipality. *See id.* at 662. The defendants moved for summary judgment based on qualified immunity, and the district court denied the motion. *See id.* at 663. On appeal, the Tenth Circuit affirmed the denial. The appellate court observed that a Taser can deploy up to 50,000 volts of electricity, causing temporary paralysis and excruciating pain, and concluded that its use in this case was objectively unreasonable. *See id.* at 665. The Court found that, to the extent the wife was suspected of a crime with respect to the domestic dispute, it was a minor one. *See id.* It reasoned that a reasonable jury could find that she did not pose an immediate threat to the officer or anyone else. *See id.* Further, she had no reason to believe she was under arrest and, accordingly, could not be attempting to resist or flee. *See id.* Viewing the facts in the light most favorable to the nonmovant-plaintiff, the Court concluded that the district court correctly denied the defendants' summary judgment motion.

Defendants contend that material issues of fact preclude summary judgment in Plaintiff's favor. They also assert that Plaintiff's reliance on *Cavanaugh* is misplaced, primarily because of the procedural posture of the case; in *Cavanaugh*,

the Court found that the defendants were not entitled to summary judgment, while, here, Plaintiff seeks the entry of judgment in his favor.[5]

We agree with Defendants: *Cavanaugh* is procedurally (and factually) distinguishable from the instant matter, and genuine disputes of material fact remain, rendering summary judgment inappropriate.  The record evidence is mixed as to various circumstances bearing on the reasonableness of Defendants' actions, for example, whether the troopers knew Plaintiff had consumed crack cocaine when they confronted him; Plaintiff's level of cooperativeness when verbally engaged by Defendants; whether Plaintiff was instructed to stop (and had time to comply) as he proceeded up the stairs; the extent to which Plaintiff struggled against the troopers as they attempted to handcuff him; and the character and degree of Plaintiff's injuries.  In light of these uncertainties, we find it prudent to submit the question to a jury, consistent with the usual course in excessive force

---

[5] Defendants made an evidentiary proffer along with their memorandum, including a copy of the police incident report and the deposition testimony of Defendants Goss and Grote, with an errata sheet appended to Goss's transcript.  Plaintiff argues at-length that we should disregard the police report as untrustworthy, since it was prepared more than two months after the incident; portions of Goss's deposition where his attorney asked him leading questions; and the errata sheet, as an attempt to materially alter deposition testimony.  Plaintiff also notes his position that parts of the police report constitute inadmissible hearsay.  We need not address any of these procedural and evidentiary arguments because, even excluding the contested evidence, we would nonetheless find summary judgment inappropriate based on other evidence evincing disputed facts.

cases. *See Rivas*, 365 F.3d at 198 ("The reasonableness of the use of force is normally an issue for the jury.").

**B.    Failure to intervene**

A police officer has an obligation to take reasonable action to protect a victim from another officer's excessive force. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). If an officer "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Id.* (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)) (internal quotation marks omitted). Liability is only incurred if the bystander officer had a "realistic and reasonable opportunity to intervene." *Id.* at 651. Generally speaking, this cause of action recognizes that "[t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force[.]" *Id.*

Having declined to enter judgment on the excessive force claim, a predicate to finding that an officer must have interceded to stop it, it follows that judgment is also improper on Plaintiff's failure to intervene claim.

13

## IV.   CONCLUSION

Viewing the facts in the light most favorable to Defendants, we find that a reasonable jury could find that they did not employ excessive force against Plaintiff or unconstitutionally fail to intervene on his behalf.  Accordingly, we must deny Plaintiff's Motion for Summary Judgment.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   Plaintiff's Motion for Summary Judgment (Doc. 31) is **DENIED**.

2.   To the extent that any case management deadlines remain operative, those dates are **VACATED**.

3.   Within 15 days of the date of this Order, the parties shall collaboratively **FILE** a stipulation with new case management deadlines, along with a proposed order, consistent with this Court's calendar (attached).

John E. Jones III
United States District Judge

14

**Judge Jones**
**2015 Court Calendar**
**(Revised 10/29/14)**

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | 7/30/14 | 9/1/14 | 12/1/14 | 1/6/15 |
| February | 8/29/14 | 10/1/14 | 1/5/15 | 2/3/15 |
| March | 9/30/14 | 11/3/14 | 2/2/15 | 3/10/15 |
| April | 10/31/14 | 12/1/14 | 3/9/15 | 4/2/15 |
| May | 11/28/14 | 1/2/15 | 4/1/15 | 5/5/15 |
| June | 12/31/14 | 2/3/15 | 5/4/15 | 6/2/15 |
| July | 1/30/15 | 3/3/15 | 6/1/15 | 7/2/15 |
| August | 2/27/15 | 4/1/15 | 7/1/15 | 8/4/15 |
| September | 3/31/15 | 5/1/15 | 8/3/15 | 9/2/15 |
| October | 4/30/15 | 6/1/15 | 9/1/15 | 10/2/15 |
| November | 5/29/15 | 7/1/15 | 10/1/15 | 11/3/15 |
| December | 6/30/15 | 8/3/15 | 11/2/15 | 12/2/15 |

**Case Management Conferences:**
1/29/15
2/27/15
3/31/15
4/30/15
5/29/15
6/30/15
7/31/15
8/31/15
9/30/15
10/30/15
11/30/15
12/30/15

**Judge Jones**
**2016 Court Calendar**

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | 7/30/15 | 9/1/15 | 12/1/15 | 1/5/16 |
| February | 8/30/15 | 10/1/15 | 1/4/16 | 2/2/16 |
| March | 9/30/15 | 11/2/15 | 2/1/16 | 3/2/16 |
| April | 10/30/15 | 12/1/15 | 3/1/16 | 4/4/16 |
| May | 11/30/15 | 1/4/16 | 4/1/16 | 5/3/16 |
| June | 12/31/15 | 2/1/16 | 5/2/16 | 6/2/16 |
| July | 1/29/16 | 3/1/16 | 6/1/16 | 7/6/16 |
| August | 2/29/16 | 4/1/16 | 7/5/17 | 8/2/16 |
| September | 3/31/16 | 5/2/16 | 8/1/16 | 9/6/16 |
| October | 4/29/16 | 6/1/16 | 9/1/16 | 10/4/16 |
| November | 5/31/16 | 7/1/16 | 10/3/16 | 11/2/16 |
| December | 6/30/16 | 8/1/16 | 11/1/16 | 12/2/16 |

**Case Management Conferences:**
1/29/16
2/29/16
3/30/16
4/29/16
5/31/16
6/29/16
7/29/16
8/31/16
9/30/16
10/31/16
11/30/16
12/28/16